STATE ex rel. GEORGE M. MURPHY, Relator, v. JESSE W. BARRETT et al., Constituting the Board of Election Commissioners of the City of St. Louis, Missouri.—No. 39129.—181 S. W. (2d) 493.

Court en Banc, June 13, 1944.

Rehearing Denied, July 3, 1944.

*Samuel H. Liberman* for relator; *Russell L. Dearmont, Emmett Golden, William L. Igoe, Leo Lyng* and *John J. Nangle* of counsel.

1132

*Joseph F. Holland,* City Counselor, *H. A. Hamilton, George L. Stemmler* and *Charles J. Dolan,* Associate City Counselors, for respondents.

LEEDY, J.—This is an original proceeding in mandamus instituted by relator, as a resident, citizen and qualified voter of the City of St. Louis, against respondents, as members of and constituting the Board of Election Commissioners of said city. Its purpose is to compel certain affirmative action on the part of respondents with respect to conducting the general state election in November of this year, and the intervening August primary,[1] at which elections, respectively, nominees of the several political parties for the office of Mayor of the City of St. Louis (unexpired term) are to be chosen, and an existing vacancy in said office filled.

The issues are framed upon the petition and the demurrer thereto. The case turns on the question of the validity of Secs. 37 and 38 of Ordinance No. 42880 of the City of St. Louis, which was passed April 5, 1944, with an emergency clause, and approved April 6, 1944.

The vacancy in question was created when, on August 1, 1943, the late lamented Mayor of the City of St. Louis, Hon. William Dee Becker, perished in an aeroplane accident. The manner of filling

[1] As summarized from the prayer of the petition: To compel respondents (1) to cause to be printed, published and delivered for use at the November, 1944, election only one form of ballot containing the names of all candidates for all offices which are to be filled at said election, including the nominees for the office of Mayor of the City of St. Louis, to provide only one set of ballot boxes for all such ballots, and to refrain from conducting said election for the office of mayor as a separate election distinct from said general state election; and (2) to print, publish and deliver, for use at the intervening August primary, election ballots of the respective political parties, each of which shall contain the names of all candidates for nomination for all offices on the said respective party tickets, including the names of candidates for nomination to the office of mayor, and likewise to provide only one set of ballot boxes for said ballots, and to refrain from conducting said primary election for the office of mayor as a separate election distinct from said general primary election.

vacancies in such office is prescribed by Art. VII, Sec. 5 of the charter of said city, as follows:

"Vacancy, by Whom Filled.—Whenever a vacancy occurs in the office of mayor, the president of the board of aldermen shall become mayor, and shall hold such office until a successor is elected and qualifies. *Such election, if for an unexpired term, shall be at the first general city or state election held fifty days or more after such vacancy occurs.* While so holding the office of mayor, a temporary vacancy shall exist in the office of the president of the board of aldermen. The vice president of the board of aldermen shall hold the office of the president of said board during any vacancy therein, with the right of succession to the office of mayor." (Emphasis ours.)

The parties are in accord, and we likewise agree, that under the italicized provision above, and the facts with reference to the date of the first general city election held fifty days or more after the vacancy occurred (which will be in April, 1945), said vacancy is to be filled at the general state election to be held in November, next.

The title of Ordinance No. 42880 is as follows:

"An Ordinance providing for the nomination of all candidates for elective city offices to be filled at general state elections; providing for the nomination of candidates by political parties by direct vote of electors at a primary election conducted by the regular election officers of and at the expense of the City of St. Louis; providing for the separation of the ballots containing the names of candidates for elective city offices from the names of candidates for county, state and national offices at such primary elections and at all general state elections at which such candidates may be voted for; repealing Sections 21 and 22 of the Revised Code of St. Louis, 1936; providing for the nomination by party or ward committees of candidates for elective city offices in which vacancies shall occur after the date set for filing as a candidate in such primary election and fifty days or more prior to such general state election; providing for nominations of candidates to take the place of candidates who shall have died or resigned after being duly nominated, making applicable to this ordinance all penal statutes of the state governing the conduct of elections; and containing a penalty clause, and an emergency clause."

Secs. 37 and 38 of said ordinance read, respectively, as follows:

"Section Thirty-seven. At all primary elections held under the provisions of this ordinance there shall be separate ballots containing the names of candidates for elective city offices only and the election commissioners shall provide separate boxes for such ballots and shall endeavor as far as practicable to conduct the primary herein provided for as a separate primary distinct from the general state primary."

"Section Thirty-eight. At all general state elections at which candidates for elective offices may be voted for there shall be separate ballots containing the names of candidates nominated in accordance

1134

with the provisions of this ordinance only and the election commissioners shall provide separate boxes for such ballots and shall endeavor as far as practicable to conduct the election of candidates for city offices as a separate election distinct from the general state election."

The question arises as to whether, in instances where the vacancy in the office of Mayor is to be filled "at" a general state election, as provided by Art. VII, Sec. 5 of the Charter, such election is an integral part of the general state election, and, governed by the state laws in relation to that subject; or whether, as respondents contend, the election is merely to be held at the same time as the·general state election, but may be held at the same place, although separately conducted, and separate ballots furnished, as the ordinance in question purports to authorize. The challenged provisions of the ordinance are in conflict with the Australian ballot provisions of the state law, one of the cardinal features of which, "under the systems as everywhere adopted," says 18 Am. Jur., Elections, sec. 163, p. 288, is "an official ballot containing the names of all candidates, printed and distributed under state or municipal authority." [Secs. 11557, 11560, 11594, 11595, 11602, 11603, 12235 R. S. '39.] It is not controverted that, if the state law governs, the ordinance must fall, for in their brief respondents "readily concede that a valid ordinance of St. Louis must be in harmony with the state law upon the same subject."

█ In support of the validity of the ordinance, and the contention that the general state election laws do not apply, respondents first direct attention to Secs. 7 and 9 of Art. II of the charter, as follows:

"Sec. 7. Except as in this charter otherwise provided, all elections shall be held ·and proceedings had in relation thereto as may be provided by law or ordinance."

"Sec. 9. Whenever it may be done in harmony with the state constitution and laws, the board of aldermen shall by ordinance provide for and regulate municipal elections and registration of voters ·and may provide by ordinance for non-partisan nominations, preferential voting, or proportional representation."

More directly, and as to the pivotal question, they contend the enactment of ordinance No. 42880 to be in accordance with the specific provisions of a valid enabling law of the state, and it is, therefore, in harmony with the state law. The state enabling act upon which respondents base their claim that the city was authorized and empowered to enact said ordinance is Sec. 11775 R. S. '39, which reads as follows:

"Full power and authority are hereby conferred on every city in this state which now has, or may hereafter have, more than 400,000 inhabitants, to provide for and regulate all elections for offices of and under such city and for the nomination of candidates for such offices; and such provision for and regulation of such elections may be effected either by charter provisions therefor adopted by the people of such

city, according to law, or ordinances therefor duly enacted or by the people thereof under the power of initiative, if any, reserved in the charter of such city.''

This and a companion section[2] (now Sec. 11776) came into the law in 1915 [Laws 1915, p. 284] as an amendment to Laws, 1913, p. 335, an act in relation to certain primary elections in cities having over 400,000 inhabitants, which act, as amended, now constitutes Art. 14 of Chapter 76, R. S. '39. There is much in the briefs concerning the proper construction to be given these sections, and particularly as to whether they apply exclusively to purely municipal elections; but in the view we take of the case, that question is not to be reached, this because of the controlling effect of an act of the 59th General Assembly providing for the permanent registration of voters, and for the ''conduct of elections'' in cities of 600,000 or more inhabitants, into which classification the City of St. Louis admittedly falls. [Laws 1937, p. 235, now Art. 24, Ch. 76, R. S. '39.] As will be seen, what is now Sec. 12195 of that act expressly provides that ''the registration of voters and *the conduct of elections* held in such cities shall be governed by the provisions of this article and the provisions of the general election laws of this State, so far as the same are not inconsistent or in conflict herewith.'' (Emphasis ours.) By par. (d) of Sec. 12196, ''election'' is defined to mean ''any general, special, municipal and primary election unless otherwise specified, and shall include a submission to a vote of the people of any amendment, law or other public act or proposition.'' The repealing provisions of said act are significant. By Sec. 12284, it was provided that, ''All laws or parts of laws contrary to, in conflict or inconsistent with the provisions of this article are *insofar as they affect cities described in the title of this article* hereby repealed.'' (Emphasis ours.) The cities so described were those ''now having, or which hereafter may have, six hundred thousand inhabitants or more according to the last decennial census of the United States.'' Assuming, without deciding, that Sec. 11775, when passed, did authorize cities of the size therein mentioned to regulate by ordinance elections of the kind in controversy (on the merits of which we express no opinion whatsoever), it is perfectly clear that Sec. 12195 withdrew (even before the enactment of the ordinance) all such authority from the City of St. Louis with respect to the two subjects dealt with by the 1937 act, to-wit, permanent

---

[2]''Whenever any such charter provisions or ordinances so enacted shall take effect, such charter provisions or ordinances shall be deemed to supersede and render inapplicable as to such city, the provisions of the statutes of this state relating to municipal elections and nominations therefor which shall have been applicable to such city prior to the taking effect of such charter provisions or ordinances: *Provided,* that nothing herein contained shall be taken or deemed to affect the conduct and supervision of such elections by the duly constituted election officials appointed according to law for such city. [Sec. 11776 R. S. '39.]

registration and "conduct of elections." It cannot be doubted that "conduct of elections" includes ballots, ballot boxes, voting and returns, matters governed by the general election laws and Art. 24, Ch. 76, supra. Finding nothing in either of the latter laws which would authorize the enactment of the challenged provisions of ordinance No. 42880, and as they are in conflict with both of said laws, it follows that our peremptory writ should be awarded. It is so ordered. All concur except *Gantt, J.*, absent.